# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JERMAINE J. FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1331SNLJ |
| ) | |
| THE MINSTER MACHINE CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to exclude the testimony and opinions of James Kenneth Blundell (#18) filed October 15, 2008. Plaintiff filed a response (#20) on October 22, 2008. Defendant then filed a reply (#21) on October 29, 2008.

In his complaint plaintiff states he was injured while operating a production system which included a power press component, portions of which were manufactured by the Minster Machine Company. The power press worked with a die set and was designed to fabricate small metal parts. While operating the machine, plaintiff inadvertently placed his left hand in the opening of the die set while he was depressing the foot switch. The switch caused the press component to power the die set to close upon portions of two fingers on plaintiff's left hand.

The press had been manufactured by Minster in 1948 and sold to a company in Ohio. Later it became the property of White Rodgers in St. Louis, Missouri and that company ordered parts in 1950 including palm buttons and a key selector switch. In 1973, the control system was modified to add an American National Standards Institute ("ANSI") compliant system which was relatively safer. The 1973 order included a guard switch receptacle, a new control bar, and new

palm buttons, but there was no foot switch in the bill of materials for the 1950 parts or the 1973 bill of materials.

In Count I of his initial pleading plaintiff seeks to assert a claim in strict products liability upon the stated theories of failure to provide a point of operation guard, providing a foot switch without providing a point of operation guard, providing a key system selection which permitted change of operation from two palm buttons to a foot pedal, providing a foot pedal without an adequate foot pedal guard, and failure to display adequate warnings. In Count II plaintiff seeks to assert a claim of negligence upon the stated theories of failure to warn, failure to test design, and designing and selling the power press and/or press upgrades with defects as alleged in Count I.

Pursuant to Federal Rule of Civil Procedure 26(a)(2), plaintiff disclosed that he would offer as an expert witness Dr. James Kenneth Blundell. Dr. Blundell was offered to testify regarding the defective and unreasonably dangerous condition of the press at the time of plaintiff's injury as well as the liability of the defendant as the cause of the injury. Defendant raises six arguments as to why Dr. Blundell should be excluded: (1) Dr. Blundell does not qualify as an expert in the field of design and manufacture of a press component; (2) Dr. Blundell has not done sufficient work to support his opinions; (3) Dr. Blundell cannot describe a barrier guard available in 1948 that would adequately guard for all potential uses; (4) Dr. Blundell cannot testify that it is feasible to creating a barrier guard without known variables; (5) Dr. Blundell's opinions are not supported by accepted standards; (6) Dr. Blundell's opinions do not connect the condition of the press in 1948 with the cause of the accident in 2006.

**I. Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When deciding a challenge to expert testimony, a judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). In Daubert, the Supreme Court identified four factors that may be used to determine the reliability of an expert's testimony: (1) whether the theory "can be (has been) tested," (2) whether the theory "has been subjected to peer review and publication," (3) the "known or potential rate of error," and (4) whether the theory enjoys "general acceptance" in the relevant scientific community. Id. at 592-94. These requirements were applied to determine the admissibility of an engineering expert's testimony in the context of products liability in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). The Court in Kumho noted that a district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., 526 U.S. at 142. In cases concerning non-scientific expert testimony, "the factors identified in Daubert may or may not be pertinent." Id. at 150. A district court should apply a three-part test when screening expert testimony under Rule 702: (1) whether the evidence would be useful to the finder-of-fact in determining the ultimate issue of fact; (2) whether the proposed witness is qualified to assist the finder-of-fact; and (3) whether the proposed evidence is reliable or trustworthy such that, if taken as true, it assists the finder-of-fact. Polski v. Quigley Corp., 588 F.3d 836, 839 (8th Cir. 2008).

**II. Discussion**

    **A. Would the testimony be relevant or useful to the jury?**

The first prong of the test established by the Eighth Circuit is essentially one of relevance: Whether the testimony of Dr. Blundell would be relevant to the issues present in this case. Defendant addresses this prong in the final argument of its motion arguing that Dr. Blundell failed to make any connection between the condition of the machine as manufactured in 1948 and the cause of the accident in 2006.

Dr. Blundell states in his report that when the Minster No. 7 OBI press was originally manufactured and sold by Minster Machine Co. in 1948, it was operated by a foot treadle and lacked an integrated barrier guard. In Dr. Blundell's opinion, the use of a foot treadle without an integrated barrier guard made the machine defective and unreasonably dangerous. Defendant argues that Dr. Blundell cannot connect the original design and manufacture of the machine with the cause of the accident. Although at the time of the accident the press was being operated by a foot pedal and lacked an integrated barrier guard, the press was in a substantially different condition than when sold. If Dr. Blundell cannot testify that the way the machine was operated in 2006, without an integrated barrier guard and using a foot pedal, was a direct result of the design and manufacture of the machine in 1948 then his testimony is not relevant in this case.

Between 1948 and 2006 the machine went through at least three evolutions. In his deposition, Dr. Blundell stated that, as he understood it, in 1950 the press was modified to incorporate palm buttons installed as an alternative to the foot switch with key selector and the buttons controlled an electric clutch. In 1973, there was a further modification to the control system. When examining the press Dr. Blundell did not observe the circuitry of the control system to determine whether the foot press was wired into the press control or plugged into a foot switch receptacle. Defendant argues without observing how the foot pedal was installed

4

there is no way to know if the use of the foot pedal in 2006 was made possible by the way the machine was manufactured in 1948.

Plaintiff did not address this issue in its response to defendant's motion to exclude Dr. Blundell's testimony. Still, this Court finds that Dr. Blundell's testimony is relevant to this case. Dr. Blundell's opinion centers upon defendant's failure to install a barrier guard at the time of manufacture. He argues that, according to the literature of the time, this was a non-delegable duty of the manufactuer. Despite the changes to the control system, it does not appear that any guarding was installed post manufacture, even with the addition of a guard receptacle. The jury could find that continuing lack of guarding was a design defect present at the time of manufacture and was a cause of plaintiff's injury. Therefore, Dr. Blundell's opinions are relevant to whether the press was defectively or dangerously designed and manufactured.

**B. Is Dr. Blundell qualified as an expert?**

The second prong when screening an expert is whether the proposed witness is qualified to assist the finder-of-fact. Defendant argues that Dr. Blundell should not be qualified as an expert because he is not an expert in the field of design and manufacture of a press component. Federal Rule of Evidence 702 recognizes knowledge, skill, experience, training, or education as bases for qualifying an expert. Dr. Blundell earned a Bachelor's Degree in Mechanical Engineering, a Master's Degree in Production Engineering, and a Ph.D. in Mechanical Engineering. According to his Curriculum Vitae he has taught in the engineering field and written numerous publications on engineering. The defendant recognizes this in its response when pointing out his authorship of a book "Machine Guarding Accidents: Trial Lawyer's Guide." The title of the book as a trial lawyer's guide does not negate the fact that it is a book dedicated to the

type of accident at issue in this case. In addition, despite Defendant pointing out that Dr. Blundell has never designed a press, Dr. Blundell has designed press guards.

This Court finds that Dr. Blundell meets the initial qualifications of being an expert.

**C. Is the proposed evidence reliable and trustworthy?**

Defendant's remaining arguments go to the third prong of the test arguing that Dr. Blundell should be excluded because his proposed testimony is not reliable or trustworthy.

**1. Has Dr. Blundell done sufficient work to support his opinions?**

Defendant argues that Dr. Blundell failed to spend adequate time with the press to fully formulate an opinion. In addition, defendant believes that the depth of Dr. Blundell's examination and research fail to adequately prepare him to aid the jury. Defendant highlights several items that Dr. Blundell did not spend time inspecting such as whether the foot switch was wired into the press control or plugged into a receptacle. Defendant also cites to several cases excluding the testimony of an expert based partially on the expert,s failure to adequately examine the equipment.

In his deposition Dr. Blundell admitted that he only spent 20 minutes with the press and failed to examine the circuitry of the machine. The question is whether such an examination was necessary to determine if the machine was dangerous when manufactured in 1948. It appears that Dr. Blundell's research centered on the expected safety standards in 1948. Dr. Blundell testified that he researched the safety standards used in 1948 and found that "Standards required that presses, such as the Minster No 7 OBI, shall be provided with guards that will prevent the press from operating until the operator has removed his hand to a safe distance." Dr. Blundell's Report, April 30, 2008 (#18-3). He also went on to note that "[n]umerous examples of universal, integrated barrier guards appear in the literature from 1912 to 1948." Id. Finally, the report states that "in the safety literature of the 1940's . . . the manufacturer of a press has a non-

delegable engineering duty to provide safeguards." Id. He stated in his report that a review of the literature from that period demonstrated that accepted standards required presses to be provided with guards. Dr. Blundell was able to determine during his examination of the press that it had no integrated barrier guard nor any barrier guard attached to the guard receptacle. This research would be valuable to the jury in a determination of whether the press was defective and unreasonably dangerous when designed and sold in 1948. The short duration of time spent with the actual press may be weighed by the jury.

Defendant counters that this research is unreliable because of Dr. Blundell's failure to consult ANSI standards. However, according to Dr. Blundell's deposition he was aware of the standards but chose not to rely on them because they post-dated the manufacturing of the machine by more than 20 years. Dr. Blundell instead relied on a review of literature from the time period that he cited in his report and deposition. The Court recognizes a discrepancy between what the forward to the ANSI states were the standards for barrier guards in 1948 and what Dr. Blundell states he found in his research. This Court, however, has no information before it that would lead to the conclusion that the safety literature published and cited by Dr. Blundell was not an accepted standard of its time. Any discrepancy is an issue for the jury to consider.

Finally, defendant cited Arnold v. Amada North American, Inc., 2008 WL 3411789 (E.D. Mo.) in which the court excluded the testimony of an expert which failed to have any expertise in the subject matter, had not tested his theory, and had never inspected the machinery. Although a jury may find that Dr. Blundell failed to adequately inspect the press he does not suffer from any of the other shortcomings of the expert in Arnold.

**2. Was there a barrier guard that could have been included on the press?**

7

Defendant's third and fourth arguments are that because the Minster No.7 OBI press was created to be used in several different ways it would have been impossible to include a universal guard to the machine. "An expert proposing safety modifications must demonstrate by some means that they would work to protect the machine operators but would not interfere with the machine's utility." Urein v. Timesavers, Inc., 394 F.3d 1008, 1012 (8th Cir. 2005) *citing* Jaurequi v. Carter Mfg.Co., 173 F.3d 1076, 1084 (8th Cir. 1999). Dr. Blundell agreed in his deposition that there was no way to create a guard that could be used in all possible situations and operating a press with an inadequate guard was more dangerous than operating a press with no guard. Defendant argues that following that logic it would have been impossible and dangerous for the defendant to have equipped the press with integrated barrier guards in 1948. Defendant also cites to Wagner v. Hesston Corp., 450 F.3d 756 (8th Cir. 2006) and Dancy v. Hyster Co., 127 F.3d 649 (8th Cir. 1997) which excluded the testimony of an expert for failure to demonstrate the proposed safety design was feasible.

Dr. Blundell argues that although a guard may not work in all situations it was the manufacture's duty to include a guard so that, at the very least, purchasers would know a guard was needed for the safe operation of the machine. In his deposition he then described a mechanically interlocked guarding system designed in 1940 that was used by American manufacturers on presses sold to Europe. It was Dr. Blundell's opinion that this type of system should have been used by Mistner Machine Company to make the press safe. The Court in Wagner and Dancy chose to exclude the testimony of the experts for failure to show a safety device that not only could be designed but that would not diminish the effectiveness of the machine. Wagner, 450 F.3d at 759; Dancy, 127 F.3d at 651. If Dr. Blundell can testify that an integrated barrier guard was used on every American manufactured machine sold to Europe

during the same time period, then there is not the same inability to show the feasability of a proposed safety devise.

This Court must decide whether the unavailability of a universal guard warrants the exclusion of Dr. Bludell's proposed modifications. In Unrein the court excluded the testimony of an expert witness that failed to demonstrate that his proposed safety mechanism to a power sander was in use on other sanders or similar machines. In contrast, Dr. Blundell states in his report that there are "[n]umerous examples of universal, integrated barrier guards . . . in the literature from 1912 to 1948." Dr. Blundell's Report, April 30, 2008 (#18-3).

There appears to be a split in the authority as to whether the inclusion of a guard by the manufacturer was warranted. Dr. Blundell states in his report that the safety literature of the 1940s places on "the manufacturer of a press . . . a non-delegable engineering duty to provide safeguards." Dr. Blundell's Report April 30, 2008 (#18-3). The defendant presents conflicting evidence in the forward to the ANSI that stated, more particularly, that "[t]he assignment of responsibility of the employer [as opposed to the manufactuer] for proper point-of-operation safeguarding has existed since the first standard, approved in 1922. . . .The same responsibility assignment existed in the standards approved in 1926 and 1937, and continued in those standards approved in 1948, 1960, 1971, and 1982, since the safeguarding requirement related to the press equipped with dies; that is, the production system in the workplace." American National Standards Institute, Inc., American National Standard for Machine Tools: Mechanical Power Presses--Safety Requirements for Construction, Care, and Use, Forward, Exhibit 4 (#21-3). These ANSI standards, however, are addressed to the responsibilities of employers, rather than manufacturers, and at least one case has held that these standards are inapplicable in a

manufacturing design defect case. *See* Murphy v. L&J Press Corp., 558 F.2d 407 (8th Cir. 1977).

This Court finds that Dr. Blundell has stated adequate reasoning and support for his opinions. If Dr. Blundell can testify that an integrated barrier guard was workable and even standard on presses manufactured for England in 1948 this Court finds that he has demonstrated the feasability of his proposed safety modification. The question of whether the failure to have a guards made this press dangerous is a question left properly for the jury.

### 3. Are Dr. Blundell's opinions supported by accepted standards?

When determining the reliability of an expert witness the court looks to whether the theory "has been subjected to peer review and publication" and enjoys "general acceptance" in the scientific community. Daubert, 509 U.S. at 580. However, although "[w]idespread acceptance of a scientific theory or technique . . . can be an important factor . . . , and a known technique which has been able to attract only minimal support within the scientific community may properly be viewed with scepticism; . . . general acceptance is not [a] necessary preconditition to the admissibility of scientific evidence." Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3rd Cir. 2000). The focus of the inquiry, however, "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 580.

Defendant argues that Dr. Blundell admits in his deposition that his opinion, that the manufacturer would have the responsibility for installing point-of-operation guards on a punch press, is a minority opinion. The exact statement made by Dr. Blundell, however, was that his opinion was contrary to the ANSI standards set forth in 1971, that an employer had the responsibility for installing point-of-operation guards. Dr. Blundell did not state that the opinion that employers were responsible for the installation of point-of-operation guards was a minority

opinion in 1948. The forward to the current ANSI, which states the responsibility has always resided with the purchaser, certainly appears to claim general acceptance for its position. However, Dr. Blundell's report states his review of relevant literature of the 1940s places the responsibility with the manufacturer. Even if Dr. Blundell's testimony does represent a minority viewpoint, he states his opinions are supported by relevant published materials of the time, and defendant failed to inquire or to challenge the relevance or reliability of those materials during Dr. Blundell's deposition. According to the standards set forth in <u>Daubert</u> and <u>Oddi</u>, exclusion of his testimony is not warranted.

**C. Conclusion**

Dr. Blundell is qualified as an expert to testify regarding whether the lack of guarding on the Minster No. 7 OBI constituted a dangerous or defective design. Information concerning the time Dr. Blundell spent inspecting the machine or standards cited by the ANSI are issues that may be raised to the jury.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to exclude the testimony and opinions of James Kenneth Blundell (#18) is **DENIED**.

Dated this ___4th___ day of February, 2009.

_____
UNITED STATES DISTRICT JUDGE