# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JERMAINE J. FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1331 SNLJ |
| ) | |
| THE MINSTER MACHINE CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment (#22), filed December 1, 2008. Plaintiff filed a response (#26) on December 22, 2008. Defendant then filed a reply (#28) on January 6, 2008.

Plaintiff filed suit against defendant seeking damages for injuries he sustained on March 24, 2006, while operating a power press production system, the Minster No. 7 OBI, portions of which were manufactured by the defendant. The press worked with a die set and was designed to fabricate small metal parts. While operating the machine, plaintiff inadvertently placed his left hand in the opening of the die set while he was depressing the foot switch. The switch caused the press component to power the die set to close upon portions of two fingers on plaintiff's left hand. Plaintiff lost both fingers and suffered nerve damage to his left hand.

The press had been manufactured by defendant in 1948. At the time of his injury, plaintiff was working for Lehner Tool & Manufacturing in St. Louis, Missouri, which had purchased the press in 2002 at auction from White-Rodgers Electric Company. In 1950, White-Rodgers had purchased the press from The American Swiss Company which was the original owner of the press.

In Count I of his initial pleading, plaintiff seeks to assert a claim in strict products liability upon the stated theories of failure to provide a point of operation guard, providing a foot pedal without providing a point of operation guard, providing a key system selection which permitted change of operation from two palm buttons to a foot pedal, providing a foot pedal without an adequate foot pedal guard, and failure to display adequate warnings. In Count II plaintiff seeks to assert a claim of negligence upon the stated theories of failure to warn, failure to test design, and designing and selling the power press and/or press upgrades with defects as alleged in Count I.

**I. Standard**

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts

showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## II. Argument

Defendant asserts three arguments in support of its motion for summary judgment: (1) the testimony of plaintiff's expert Dr. James Kenneth Blundell should be excluded; (2) the machine was not in materially the same condition at the time of the accident as it was in 1948; and (3) even if allowed to testify, plaintiff's expert cannot testify that the barrier guard installed in 1948 would have prevented the accident in 2006.

In a products liability cause, plaintiff must demonstrate that "(1) defendant sold the product in the course of [its] business, (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use, (3) the product was used in a manner reasonably anticipated, and (4) [the plaintiff] was injured as a direct result of such defective condition as existed when the product was sold." Menz v. New Holland North America, Inc., 507 F.3d 1107, 1114 (8th Cir. 2007); Columbia Mut. Ins. Co. V. Epstein, 238 S.W.3d 667, 671 (Mo. App. E.D. 2007).

### A. Exclusion of the testimony of Dr. Blundell

Subsequent to the filing of this motion for summary judgment, this Court addressed the issue of the exclusion of Dr. Blundell in the Memorandum and Order of February 4, 2009 (#29). This Court held that Dr. Blundell is qualified as an expert to testify regarding whether the lack of guarding on the Minster No. 7 OBI constituted a dangerous or defective design.

**B. Were there material changes made to the press between 1948 and 2006?**

Defendant argues that there were several material changes to the press between 1948 and 2006 that make it impossible for plaintiff to prove that his injuries were a direct result of the defective condition of the press, as it existed when originally sold. As noted, the press was originally sold by defendant to The American Swiss Company in 1948. The uncontroverted material facts show that, as originally sold, the press contained a foot switch that could be used by the operator to cycle the press up and down and contained no point of operation guarding.

The press was subsequently sold to White-Rodgers Electric Company in 1950. White-Rodgers purchased from defendant a hand/foot selector switch which allowed the press to operate with the use of either the two-hand start buttons or a foot switch device. Defendant also sold White-Rodgers a foot switch. In 1973, defendant sold White-Rodgers a clutch control Type "E" which was installed and was still in use when the press was inspected in 2007. The new clutch system replaced the old control system but was compatible with a foot switch.

Plaintiff's employer purchased the press from White-Rodgers in 2002. Frank Lehner, owner of Lehner Tool & Manufacturing, testified in his deposition that he made no modifications, changes, or repairs to the subject press. However, uncontroverted facts also establish that a someone, at some point, had added a relay inside the electrical panel, a selector switch on the outside of the panel, a Square D foot switch wired directly into the circuits inside the press control electrical panel, and disabled the guard switch receptacle on the 1973 control panel by

4

clipping and shorting wires inside the panel. At the time of the accident, the machine was operated by foot switch and there was no point of operation guarding being used.

Defendant claims that these changes so alter the press that the injury to plaintiff could not possibly be due to a defective condition as existed with the product was sold. Plaintiff responds that the subsequent changes to the press were insubstantial changes. Dr. Blundell testified in his deposition that the subsequent changes did not effect his opinions of liability. At the time it was sold the press machine was capable of being operated with a foot switch and contained no point of operation guard. The installation of the new clutch control still allowed the press to be operated with a foot switch and no point of operation guard. A reasonable jury could conclude the electrical control changes did not materially alter the condition of the machine, because it was operated in the same manner on the day of the accident as on the day it was sold.

In addition, defendant claims that Dr. Blundell failed to adequately inspect the press to know that it was in substantially the same condition. Although Dr. Blundell spent only 20 minutes with the press, he also reviewed documents provided by the defendant, including wiring diagrams and manuals. The lack of physical examination of the electrical system of the machine may be weighted by the jury.

**C. Was the lack of barrier guard in 1948 a cause of the injury in 2006?**

Defendant's third argument also challenges plaintiff's ability to demonstrate causation. Defendant argues that, in his deposition, Dr. Blundell admitted that there was no "universal" barrier guard that would be suitable for all operations possible on the press component. Likewise, he agreed that having an inadequate guard was more dangerous than no guard. Therefore, a guard included for the original operation of the press component in 1948 might be a dangerous point of operation guard for other subsequent operations using other tooling to produce other

5

outputs. Thus, If a point of operation guard may have been more dangerous, its absence cannot logically be the cause of plaintiff's injury

As discussed in this Court's previous memorandum and order denying the exclusion of Dr. Blundell's testimony, Dr. Blundell's opinion is that, although a guard may not work in all situations, in 1948, it was the manufacture's duty to include a guard so that, at the very least, purchasers would know a guard was needed for the safe operation of the machine. Comparing press guarding to table saw guarding, Dr. Blundell argued that it was possible for manufactures to provide guarding that would work in the majority of operations and then, if a purchaser wanted to use the machine in a way incompatible with that guarding that purchaser could then modify or change the guarding to suit their individualized needs. Dr. Blundell then described a mechanically interlocked guarding system designed in 1940 that was used by American manufactures on presses sold to European countries. It was Dr. Blundell's opinion that this type of system should have been used by defendant to make the press safe. Dr. Blundell's stated opinion is that defendant's failure to install a barrier guard in 1948 was the direct cause of plaintiff's injury in 2006.

Defendant's argument regarding an original barrier guard being more dangerous in 2006 than no barrier guard at all is simply a response to plaintiff's causation argument. A jury is the proper party to weigh the competing arguments and decide whether the causation element of plaintiff's claim has been met.

**III. Conclusion**

This Court has previously ruled that Dr. Blundell is qualified to testify as an expert witness. With Dr. Blundell's testimony, plaintiff has presented support for each of the elements of a products liability claim. Although defendant has presented facts and evidence to counter

6

plaintiff's claim they do not warrant summary judgment. The jury is the proper fact finder to weigh the competing arguments in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#22) be and is **DENIED** in its entirety.

Dated this __20th__ day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE